**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Paula K. Moland,<br><br>　　　　　　　　　　　　　　Debtor. | C/A No. 15-04572-DD<br><br>Adv. Pro. No. 16-80167-DD<br><br>Chapter 7<br><br>**ORDER** |
| Paula K. Moland,<br><br>　　　　　　　　　　　　　　Plaintiff,<br>v.<br><br>Department of Treasury,<br><br>　　　　　　　　　　　　　　Defendant. | |

This matter is before the Court on a Motion for Summary Judgment ("Motion") filed by Defendant Department of Treasury ("Government"), on July 31, 2017 [Docket No. 17]. After the Motion was filed, but before the time to respond to the Motion had run, Counsel for Plaintiff, Paula K. Moland ("Moland"), filed a Motion to Withdraw as Attorney. The Court entered an Order on October 20, 2017 [Docket No. 27] granting the Motion to Withdraw as Attorney, and giving Moland 45-days to find new counsel. Moland filed correspondence with the Court on December 27, 2017 indicating her intent to proceed pro se. A telephonic status conference was held on February 2, 2018. The Court provided the pro se notice[1] required by Local Rule 7056-1 to Moland on February 2, 2018. The notice informed Moland that if she wished to oppose the Motion she must file with the Court and serve on Defendant a written response on or before February 28, 2018. Moland filed a response to the Motion on March 2, 2018 [Docket No. 36]. Moland's complaint and response to the Motion were considered. For the reasons stated below, Defendant's Motion is granted.

---

[1] Consistent with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

**Undisputed Facts**

1.Moland filed her petition for relief under chapter 7 of the bankruptcy code on August 28, 2015. On December 15, 2016, she initiated this adversary proceeding to determine the dischargeability of her federal income taxes for 2005-2009.

2.From 2001 to 2009, Moland was married to Scott Fetchen ("Fetchen").[2] Moland and Fetchen separated in March 2008. Fetchen did not have significant assets when he and Moland married, nor was he gainfully employed during virtually all of the marriage. *See* Ex. E 15:2-9.

3.From 2005 through 2012, Moland's exclusive source of income was daycare centers she owned and operated. Two of the daycares, Stanley Moland Little Friends School and Blue Kangaroo, were in New Jersey. The third, Starfish Academy, was located in Mount Pleasant, South Carolina.

4.Moland was the sole owner of all three daycares. Moland received a regular salary from the daycares, from which a payroll company withheld income and employment taxes. *See* Exhibit D ("Moland Dep.") at 14:23-18:6. Moland took the remainder of her income in the form of regular draws not subject to withholding. *Id*. at 100:4-101:19, 103:11-14. Moland regularly took draws of over $45,000.00 on a monthly basis. *See* Moland Dep. at 134:9-135:13.

5.Moland and Fetchen purchased a boat for approximately $43,000 in 2004, and from April 2004 to October 2010, made regular monthly payments of $498.07. *See* Moland Dep. at 152:12-154:18; Ex. K.

6.Moland and Fetchen filed joint Forms 1040 for tax years 2005 through 2009 and reported their tax liabilities. The 2005 and 2006 tax returns were untimely filed on January 23, 2007, and October 20, 2007, respectively. The tax returns for 2007, 2008, and 2009 were timely

---

[2] This adversary proceeding is related to Adv. Case No. 16-80158-dd, also pending before this Court. Scott Fetchen is the plaintiff in that matter, and a joint debtor for the tax liabilities at issue in this matter.

filed. Moland did not contest the Government's computation of her income tax obligations as set forth in the Motion:

| YEAR | DATE FILED | ADJUSTED GROSS INCOME | TAX PER RETURN | PAID AS OF FILING DATE |
|---|---|---|---|---|
| 2005 | 01/23/2007 | $462,152.00 | $132,118.00 | $2,398.00 |
| 2006 | 10/20/2007 | $662,747.00 | $175,778.00 | $26,950.00 |
| 2007 | 10/15/2008 | $596,575.00 | $141,219.00 | $25,129.00 |
| 2008 | 10/15/2009 | $525,331.00 | $162,244.00 | $28,592.00 |
| 2009 | 10/14/2010 | $358,863.00 | $95,164.00 | $23,103.00 |
| **TOTAL** | | **$2,605,668.00** | **$706,523.00** | **$106,172.00** |

7. Moland acknowledged knowing about the taxes owed for each year on the date the tax returns were filed. *See* Moland Dep. at 112:13-116:20.

8. In 2012, Moland consented to a judgment against her for the amount of unpaid taxes for 2005-2009. *See* Moland Dep. at 129:1-9. As of the date of filing her bankruptcy petition, Moland acknowledged owning $926,774.04 in unpaid taxes for 2005-2009, together with interest and penalties. *See* Schedule F to Moland's Bankruptcy Petition (ECF No. 1 to Case No. 15-04572-dd).

9. In November 2007, Moland and Fetchen completed an IRS Form 433-A and reported total monthly earnings of $56,082 per month. On the same form, they reported living expenses of just under $50,000. *See* Moland Dep. at 132:22-133:6-7, 134:12-135:3; Ex. N. Personal bank statements from November 2007 to January 2008 indicate total monthly spending in excess of $50,000 per month. *See* Ex. G (showing total monthly charges to Moland and Fetchen's personal account of $86,610 in November 2007, $77,376 in December 2007, and $102,375 in January 2008. Moland acknowledged the accuracy of those amounts. *See* Moland Dep. at 140:22-141:8.

3

10. Moland's daughter attended Ashley Hall, a private, all-girls, K-12 school in Charleston. Moland paid tuition of $1,320.00 per month to Ashley Hall. *See* Ex. E 72:22-72:11.

11. From January 2007 through 2010, Moland traveled extensively, including trips to:

- **Turks and Caicos**, February 2007. *See* Moland Dep. at 138:1-5, *see also* Exs. G and I (including charges at the Grace Bay Club for $2,666.22 and $857.00)
- **Los Cabos, Mexico**, April 2007. *See* Moland Dep. at 140:2-6; *see also* Ex. G.
- **Costa Rica**, August 2007. *See* Ex. G (including charges at Los Suenos Resort and Marina)
- **Paris, France**, March 2009. *See* Moland Dep. at 145:2-146:21; Exs. H and I (including charges of $720.32 and $314.09 at Haviland, $416.76 at the Hard Rock Café Paris, and $1,997.98 at the Hotel Meurice)
- **Las Vegas**, September 2009. *See* Moland Dep. at 146:23-25; Exs. H and I (including charges of $672.00 for an aerial tour of the Grand Canyon with Papillon, $340.00 at the Wynn Box Office, and $436.83 at Green Valley Ranch)
- **Royal Caribbean Cruise Lines cruise**, March/April 2010. *See* Moland Dep. at 147:4-21; Ex. J (including charges for $285.97 at the Ritz-Carlton Carolina in Puerto Rico, $2,762.46 on the Serenade of the Seas)
- **Germany, Austria, Switzerland, and France**, July 2010. *See* Moland Dep. at 147:22-148:3; Exs. H and J (including charges for $747.52 at House of 1000 Clocks on 07/19/2010, $430.80 at Villa Eugene Epernay on 07/21/2010).

12. Moland commonly spent several hundred dollars at a time, sometimes thousands, at the mall. These purchases include: purchases totaling $1,200 on December 1, 2008 at Short Hills Mall in New Jersey (*see* Ex. I, including purchases at Williams-Sonoma, Nordstrom, Banana Republic, and J. Crew); $891.01 at Pottery Barn in March 2009 (*see* Ex. H); charges totaling more than $945 at Nordstrom, J. Crew, and J.Jill (*see* Ex. H); $868.58 at Gwynn's of Mount Pleasant on March 30, 2009 (*see* Ex. H); $1,128.73 at Mattress Source on March 31, 2009 (*see* Ex. H); $324.27 at Apple Store on August 3, 2009 (*see* Ex. H); $509.75 at Target on August 11, 2009 (*see* Ex. H).

13. Moland regularly used business bank accounts to make personal purchases, and fund her extensive travel and shopping. In March 2009, Moland charged her stay at Hotel Le Meurice in Paris and other expenses while in Paris to the Starfish Academy account. *See* Ex. I, pg. 64; Moland Dep. at 145:18-146:1. In November 2007, Moland charged airfare to fly her family

4

to Colorado to the Starfish account. *Id.* at 142:24-143:18, Ex. I. Moland charged her monthly car payment for a Mercedes CLK 500 to the Stanley Moland Friends account. *See* Ex. R (indicating monthly charges of $630.86).

14.     Moland regularly withdrew money from the Starfish Academy business checking account, account number 5134 (Ex. I). For example, in December 2008 Moland withdrew or transferred to her personal checking account $32,500.00 from the Starfish Academy business account. See Ex. I pg. 56-59. In March 2009, Moland withdrew or transferred to her personal checking account $10,000.00 from the Starfish Academy business account. See Ex. I pg. 61-63. In August through September 2009, Moland withdrew or transferred to her personal checking account $39,500.00 from the Starfish Academy business account. See Ex. I pg. 66-72. In March 2010, Moland withdrew or transferred to her personal checking account $23,000.00 from the Starfish Academy business checking account. See Ex. I pg. 75. Moland testified in her deposition that she frequently took draws from the businesses, but did not make estimated tax payments throughout the year on those draws. See Moland Depo. 103:11-104:13. Moland further testified in her deposition that numerous transactions on the Starfish Academy account were personal in nature. See Moland Depo. 152:6-10.

## **Legal Standard**

Summary judgment is appropriate when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials … show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return

5

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The role of the judge in deciding summary judgment is "not himself to weigh the evidence … but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party requesting summary judgment must demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This initial burden requires the moving party to identify those portions of the record that it believes demonstrate the absence of a genuine dispute. *Celotex*, 477 U.S. at 323; *see also Anderson*, 477 U.S. at 249. The nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed R. Civ. P. 56(e). If the nonmoving party fails to provide evidence supporting an essential element of its case, then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. The Court must view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). However, "inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn." *Barefield v. Board of Trustees of CA State Univ., Bakersfield*, 500 F.Supp.2d 1244, 1273 (E.D.Ca. 2007).

## Analysis

**1) General Principles**

A discharge in a bankruptcy generally prevents a creditor from pursuing pre-bankruptcy debts against a debtor. Congress has specifically excepted particular debts, including certain federal tax debts, from discharge. One of those exceptions is significant to this case. Under 11 U.S.C. § 523(a)(1)(C), a discharge in bankruptcy "does not discharge an individual debtor from any debt for a tax or customs duty with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

The Government argues that section 523(a)(1)(C) excepts Moland's income tax debts for tax years 2005-2009 from discharge. Exceptions to discharge under section 523(a) must be proven by a preponderance of the evidence. *See In re Bearden*, 382 B.R. 911, 916 (Bankr. D.S.C. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

**2) Section 523(a)(1)(C)**

Section 523(a)(1)(C) does not define what constitutes a "willful attempt to evade or defeat a tax," nor does it articulate standards for doing so. *See Lynch v. United States (In re Lynch)*, 299 B.R. 62, 83 & n. 97 (Bankr.S.D.N.Y. 2003). The Fourth Circuit, nor the District of South Carolina, have determined a construction of what an attempt to evade or defeat a tax look like. However, other courts have determined that the willful evasion of tax debts encompasses "both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'willfully')." *Conard v. IRS (In re Conard)*, No. 16-01121-KHK, 2017 WL 6406065, at *4 (Bankr. E.D.Va. 2017) (citing *United States v. Clayton*, 468 B.R. 763, 770 (M.D.N.C. 2012)). The Government contends that both of these elements are undisputedly present in this case.

    **a) Conduct Requirement**

A debtor's mere failure to pay her taxes is insufficient proof to establish that she has acted to evade or defeat her taxes. "Rather, nonpayment is relevant evidence which a court should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." *Clayton*, 468 B.R. at 770 (citing *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir. 1996)). The court in *Clayton* listed various factors that, with nonpayment, have been found to be sufficient to satisfy the conduct element, including: the failure to timely file returns, the concealment of assets, inadequate recordkeeping, intra-family or fraudulent transfers, and a lavish

7

or extravagant lifestyle, which the court found to be relevant "if they took place during the tax years in which the debtor failed to pay or during later years while the obligation remained due." *Id.*

Here, it is undisputed that Moland failed to timely file her 2005 and 2006 tax returns. The tax returns for 2007, 2008, and 2009 were timely filed. Moland does not dispute the evidence presented by the Government that she lived a lavish lifestyle during the tax years in which she failed to pay and during the later years while the taxes remained due. Moland admitted to the existence and accuracy of the evidence submitted by the Government of her discretionary expenditures that occurred during and after each of the years that the tax debts were incurred. Moland does not dispute the evidence the Government has presented regarding her extensive travel from January 2007 through 2010, other than to argue the home rented in Steamboat Springs, Colorado from 2008 to 2010 was used while a new business was setup in Colorado. Moland does not dispute that she continued to pay for a boat during the tax years in which she failed to pay and during the later years while the taxes remained due. Moland does not dispute the evidence presented that she commonly spent several hundred dollars at a time, sometimes thousands, while shopping.

In the face of these facts established by the Government, Moland offers no specific fact establishing that a genuine issue exists as to whether the funds she spent for travel, shopping and a boat could be regarded as essential, nor does she dispute that these purchases were made at a time when there were unpaid tax obligations. Further, Moland maintained substantial earnings during the tax years in issue, maintained a lavish and extravagant lifestyle of shopping sprees and expensive vacationing while simultaneously failing to fulfill her tax obligations. Thus, the

8

Government has established that there is no genuine issue of material fact regarding the presence of the conduct element of section 523(a)(1)(C).

    **b) Mental Requirement**

The Government must demonstrate that the debtor's actions were willful, not that she acted with fraudulent intent. *Clayton*, 468 B.R. at 771 (citing *In re Fegeley*, 118 F.3d 979, 983 (3d. Cir. 1997)). "A debtor's actions are willful if his actions are voluntary, conscious, and intentional." *Id.* (quoting *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994)). Thus, the Government must prove that the debtor "(1) had a duty to file income tax returns and pay taxes; (2) knew that he had such a duty; and (3) voluntarily and intentionally violated that duty." *Id.* (quoting *United States v. Fretz (in re Fretz)*, 244 F.3d 1323, 1330 (11th Cir. 2001)). The Government argues that no genuine issue of material fact exists regarding the mental state requirement.

In Moland's deposition, she admitted that she knew she had a duty to file tax returns and pay taxes for the tax years under dispute. Moland Dep. 121:17-18, 121:24-25. Therefore, the first two components are not at issue.

"When determining if a debtor voluntarily and intentionally violated his duty to pay taxes, courts traditionally look to 'badges of fraud.'" *Clayton*, 468 B.R. at 772 (citing *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1322 n. 4 (11th Cir. 2011)). The court in *Clayton* indicates that a badge of fraud includes the understatement of income. *See Id.* The court in *Clayton* instructs that "lavish spending coupled with the knowledge of tax debts is further indication that a debtor acts willfully in the evasion of his tax obligations." *Id.* (citing *Hamm v. United States (In re Hamm)*, 356 B.R. 263, 276-77 (Bankr. S.D.Fla. 2006)). Other courts have found that "[a] typical case of non-dischargeable tax liability pursuant to § 523 of the Bankruptcy Code often involves

9

debtors who…live a lavish lifestyle they cannot afford…while making no effort to satisfy their tax liability." *Hawkins v. Franchise Tax Bd.*, 447 B.R. 291, 296 (N.D.Cal. 2011) (quoting *Rhodes v. United States (In re Rhodes)*, 356 B.R. 229, 235 (Bankr.M.D.Fla. 2006)); *see also Stamper v. United States (In re Gardner)*, 360 F.3d 551, 561 (6th Cir. 2004) (a debtor who acknowledged his legal responsibility to pay taxes and could have used some of his earnings to do so but consciously decided not to willfully avoided his tax liabilities).

The record is uncontroverted that since filing her 2005 tax return in January 2007, Moland knew of her unpaid taxes and has received regular correspondence from the IRS regarding the amount of her unpaid taxes. Moland Dep. at 131:4-13. Despite knowing of her unpaid tax obligations in January 2007, Moland continued to travel extensively throughout 2007 and in 2009 and 2010. Fetchen testified in his deposition that traveling was, and continues to be, a hobby of Moland. *See* Ex. E 80:6-7. Further, Moland's bank records indicate, and she confirmed in her deposition, total monthly speeding ranging from $75,000 to $100,000 between November 2007 and January 2008. Moland's own filed tax returns for the years after 2007, when she became aware of the 2005 tax debt, indicate adjusted gross income between $358,856 and $596,575 and Moland failed to use some of her earnings to pay the previous years' tax debt. Moland made substantial draws from her businesses without withholding taxes and failed to pay estimated tax payments throughout the year. Moland has offered no dispute of the evidence presented by the Government establishing that she voluntarily and intentionally violated her duty to pay her taxes. Further, Moland used the business accounts to pay numerous personal expenses, which ultimately should have been classified as further income for Moland subject to withholding. The use of the business accounts for personal expenses is evidence of understated income, a badge of fraud. As noted above, this was not done. The mental state requirement of § 523(a)(1)(C) has been met.

There are no genuine issues of material fact concerning Moland's conduct and mental state for each of the tax years in question.  Even extending Moland all reasonable factual inferences, the undisputed facts and evidence presented demonstrate Moland's lavish lifestyle, extravagant spending, and use of business accounts for personal expenses.  The record is uncontroverted that her knowledge of her obligation to pay her income taxes, her failure to do so and her conscious and willful decision to expend available funds on discretionary items and lavish travel occurred during and subsequent to 2005 through 2010, the tax years at issue.  *See In re Conard*, 2017 WL 6403065 at *6 (citing *In re Gardner,* 360 F.3d at 560-61 (lavish lifestyle in subsequent years evidenced an ability to pay the previous years' tax liabilities and is relevant to determining willful evasion of those previous years' taxes.)).

## Conclusion

For the reasons stated above, the Motion is granted.  The Court finds that no genuine issue of fact exists regarding the applicability of § 523(a)(1)(C) to the income tax debt owed by Moland for the tax years 2005-2009.  Accordingly, Moland's chapter 7 discharge does not discharge her from her debt to the IRS for tax years 2005 through 2009.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT
03/15/2018**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 03/16/2018

11